Nathan GORDON and Lillian Gordon, His Wife, Plaintiffs–Appellants,

v.

LYKES BROTHERS STEAMSHIP CO., INC., et al., Defendants,

United States of America, Defendant–Appellee.

No. 87–3015.

United States Court of Appeals, Fifth Circuit.

Jan. 5, 1988.

Rehearing and Rehearing En Banc Denied Feb. 24, 1988.

Scott R. Bickford, John R. Martzell, Martzell & Thomas, New Orleans, La., Allen D. Fuller, Miami Beach, Fla., for plaintiffs-appellants.

Gregory C. Sisk, Robert S. Greenspan, Attys., Civ. Div., Washington, D.C., for U.S.

Before SNEED,* REAVLEY, and JOHNSON, Circuit Judges.

SNEED, Circuit Judge:

Gordon, a former merchant seaman, and his wife brought suit in admiralty against the United States for injuries contracted from exposure to asbestos on government ships during World War II. The district court dismissed the claim on summary judgment. It held that the discretionary function exception to waivers of sovereign immunity applied to claims under the Suits in Admiralty Act and therefore held that it

* Circuit Judge of the Ninth Circuit, sitting by designation.

had no subject matter jurisdiction. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

Plaintiff-appellant Gordon was a marine engineer during World War II. During that time he worked in the engine rooms of twelve different merchant cargo and Liberty ships. The engine rooms of such ships were heavily insulated with asbestos. One of Gordon's jobs was to repair and maintain asbestos-containing insulation. Gordon alleges that he contracted an asbestos-related disease as a result of working on these ships.

During World War II, a government agency, the War Shipping Administration (WSA), assumed control of almost all U.S. merchant marine vessels. The vessels continued to be operated by the original private owners pursuant to General Agency Agreements. Members of the merchant marine, who customarily sail first on one vessel and then on another, were put in an unusual legal position because of the new relationship between the United States and the owners of the vessels. The rights of seamen, as private employees, included the right to sue their employer under the Jones Act for injury or death. United States government employees, however, were restricted to a particular and quite different compensation scheme for injuries. To deal with the problems caused by having separate compensation systems depending on the kind of ownership interest the United States might have in a vessel, Congress enacted the Clarification Act of 1943. The Clarification Act effectively broadened the scope of the Suits in Admiralty Act (SAA), 46 U.S.C. §§ 741–752 (1982), by permitting seamen on merchant vessels that were owned by the United States, or bareboats-chartered to the WSA, to sue the United States instead of the private company that owned the vessel.

Efficient ship construction and operation was a very high priority of the United States government during World War II. The government sought to standardize construction of merchant vessels. A consequence was that asbestos was used heavily in ship construction.

In 1985, Gordon and his wife filed a personal injury suit against several private shipowners in the Southern District of Florida alleging that Gordon had contracted an asbestos-related disease while working aboard various vessels. The action was transferred to the Eastern District of Louisiana where it was consolidated with a number of seamen's asbestos cases.

The Gordons also filed an administrative claim against the United States with the Maritime Commission pursuant to the SAA, which was denied on February 6, 1986. Thereafter, the Gordons filed an amended complaint in District Court naming the United States and various asbestos manufacturers as parties.

The United States filed a motion for summary judgment denying subject matter jurisdiction and arguing that the use of asbestos on vessels during World War II fell within the discretionary function exception to waivers of sovereign immunity. The district court granted the government's motion and dismissed for lack of subject matter jurisdiction. The district court then denied a motion for reconsideration. The case against the defendant shipowners and asbestos manufacturers was settled soon after a jury was selected. The final judgment dismissing the United States was entered on December 31, 1986. Notice of this appeal was timely filed on January 7, 1987.

## II.

### JURISDICTION

The district court's jurisdiction rested on the SAA, 46 U.S.C. § 742 (1982), and 28 U.S.C. § 1333(1) (1982) admiralty jurisdiction. Our jurisdiction is derived from 28 U.S.C. § 1291 (1982).

## III.

### STANDARD OF REVIEW

This case was dismissed on summary judgment. We repeat the ritualistic sentences setting forth our standard of re-

view. Summary judgment dismissal is reviewed *de novo. Brock v. Republic Airlines, Inc.* 776 F.2d 523, 527 (5th Cir.1985); *GATX Aircraft Corp. v. M/V Courtney Leigh,* 768 F.2d 711, 714 (5th Cir.1985). Therefore, we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.

## IV.

## DISCUSSION

A. *The Suits in Admiralty Act, the Clarification Act, and the Discretionary Function Exception*

Initially, we confront the question whether the discretionary function exception is applicable to the facts of this case. This issue, in our view, previously has been decided affirmatively by this court. *See Wiggins v. United States,* 799 F.2d 962, 966 (5th Cir.1986).

■ Briefly we sketch the outline of the issue. Suits in admiralty may be brought against the United States under the SAA. This act waives the government's sovereign immunity.

> In cases where if [a U.S.] vessel were privately owned or operated, or if [U.S.] cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States....

*Id.* § 742.

In effect, the SAA is a jurisdictional statute providing for maintenance of admiralty suits against the United States which encompasses all maritime torts alleged against the United States. *See United States v. United Continental Tuna Corp.,* 425 U.S. 164, 176 n. 14, 96 S.Ct. 1319, 1326 n. 14, 47 L.Ed.2d 653 (1976).

■ The Clarification Act, passed during World War II, also waived the government's sovereign immunity. It applied to maritime claims made by merchant seamen sailing on WSA-operated vessels. Under the Act seamen

> employed on United States or foreign flag vessels as employees of the United States through the War Shipping Administration shall, with respect to ... death, injuries, illness, ... have all of the rights, benefits, exemptions, privileges, and liabilities, under law applicable to citizens of the United States employed as seamen on privately owned and operated American vessels.

50 U.S.C. app. § 1291(a) (1982). At the same time the Act took away their right to sue private vessel owners and any rights to compensation under any U.S. employees' compensation scheme. The Act also states that any claim made for death, injury, and disease, after administrative denial, be "enforced pursuant to the provisions of the Suits in Admiralty Act." *Id.*

The precise scope of these waivers of sovereign immunity has been before the courts on several occasions. Unlike the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2674 *et seq.* (1982), no discretionary function exception to these waivers was expressed. The discretionary function exception, at its root, stands for the proposition that "it is not a tort for government to govern." *Dalehite v. United States,* 346 U.S. 15, 57, 73 S.Ct. 956, 979, 97 L.Ed. 1427 (Jackson, J., dissenting). The exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines,* 467 U.S. 797, 808, 104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984). Notwithstanding the absence of express language, this court has agreed with other circuits that "a discretionary functions limitation is implicit in private suits brought against the United States Government under the Suits in Admiralty Act." *Wiggins v. United States,* 799 F.2d at 966. *See Gemp v. United States,* 684 F.2d 404, 408 (6th Cir.1982); *Estate of Callas v. United States,* 682 F.2d 613, 619 (7th Cir.1982); *Bearce v. United States,* 614 F.2d 556, 559–60 (7th Cir.), *cert. denied,* 449 U.S.

837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980); *Canadian Transport Co. v. United States*, 663 F.2d 1081, 1085–87 (D.C.Cir.1980); *Gercey v. United States*, 540 F.2d 536, 539 (1st Cir.1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977). This court in *Wiggins* read the discretionary function exception into the SAA based on a review of the Supreme Court's decision in *United States v. Varig Airlines*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), and its conclusion that the discretionary function exception is based on a "combination of the doctrines of sovereign immunity and separation of powers." *Wiggins*, 799 F.2d at 965.

■ Plaintiffs argue, however, that their rights stem from the Clarification Act, not the SAA. The former, they insist, should be read literally, thereby excluding a discretionary function exception. They fail to mention, however, that the language in the Clarification Act utilizes the SAA to make its authorized claims enforceable. This justifies our drawing upon the deep sources that nourished *Wiggins*. Having done so, we hold that the Clarification Act is limited by the discretionary function.

## B. *The Reach of the Discretionary Function Exception*

■ The Gordons understandably argue that the construction of ships using asbestos insulation, the operation of ships already built with asbestos insulation, and the failure to maintain safe working conditions in an asbestos-surrounded environment were negligent actions not protected by the discretionary function exception. They support their position by arguing that the exception does not trump the duty to provide a seaworthy vessel, a duty they insist the United States did not perform.

While all acknowledge that the important acts of high officials and the routine acts of their low-level agents constitute the extremes of the discretionary-nondiscretionary function spectrum, all also recognize that there is no wholly satisfactory classification of those acts that fall near the midpoint of this spectrum. In examining the scope of the exception to the FTCA, the Supreme Court said it is impossible "to define with precision every contour of the discretionary function exception." *Varig Airlines*, 467 U.S. at 813, 104 S.Ct. at 2764. Nonetheless, the Court said it is possible

to isolate several factors useful in determining when the acts of a Government employee are protected from liability.... First, it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.... Thus, the basic inquiry ... is whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability.

Second, whatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals.... This [congressional] emphasis upon protection for regulatory activities suggests an underlying basis for the inclusion of an exception for discretionary functions in the Act: Congress wished to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.

*Id.* at 813–14, 104 S.Ct. at 2764–65.

In *Dalehite v. United States*, 346 U.S. 15, 35–36, 73 S.Ct. 956, 967–68, 97 L.Ed. 1427 (1953), the seminal case that *Varig* reaffirmed, the Supreme Court said that governmental discretion includes not only the initiation of programs and activities, but also "determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion."

The facts in *Dalehite* support our holding. The Court immunized the decisions of government officials who decided to adopt certain production standards in the interest of quickly providing fertilizer to war-torn countries. The fertilizer was produced and distributed as per the specifications, and under the control, of the United States.

The chain of command and control of government officials over the operation was quite similar to the roles of the relevant government officials in the WSA. In *Dalehite*, "[t]he negligence charged was that the United States, without definitive investigation of [the chemical's] properties, shipped or permitted shipment to a congested area without warning of the possibility of explosion under certain conditions." *Id.* at 23, 73 S.Ct. at 962. Nonetheless, the Court found that the government's actions were immunized by the discretionary function exception.

In the case before us, the government has provided a substantial amount of historical evidence showing that the use of asbestos was consistent both with the policy of building the ships rapidly and the existing standard design. In both cases officials chose from among important alternative courses of action. The government's decision not to establish a safety program for seamen working with asbestos was a similar choice. The teaching of *Varig* and *Dalehite* has been recognized in cases similar to this one. For example, in *Shuman v. United States*, 765 F.2d 283 (1st Cir.1985), the court found the government immunized by the exercise of its discretion in not establishing a safety program. The plaintiff claimed damages under the FTCA for asbestos-related death stemming from the negligence of the United States in allowing certain working conditions at shipyards during the war. The *Shuman* court referred to *Dalehite* and *Varig,* and found that "[l]ack of due care in promulgating a policy, or in having no policy or program at all on an issue, however imprudent it might seem, is encompassed within the discretionary function exception." *Id.* at 290. Similarly, in *Ford v. American Motors Corp.*, 770 F.2d 465 (5th Cir.1985), this court addressed a claim that the Postal Service was negligent in selling jeeps at surplus without warning the buyers of the jeeps' propensity to overturn in certain situations. We found that "[t]he decision to sell, including time, place, method, manner, and procedure, was likewise a discretionary act. Whether considered as a commission or omission, the decision not to

issue cautions or warnings about the increased rollover potential was also within the discretionary parameters of the Postal Service." *Id.* at 467. And *Wiggins* itself followed the same line in holding that the decision of the Army Corps of Engineers not to remove pilings from a lake was "exempt from challenge under the implied discretionary decision exception of § 745 of the SAA." *Wiggins*, 799 F.2d at 967.

In all the above cases, the government created no danger to the plaintiff after the critical discretionary decision had been made. This essential fact cannot be overcome by clothing the discretionary act in the maritime uniform of a breach of a duty to provide a seaworthy vessel. Nomenclature, even when backed by the traditions of admiralty law, must yield to the force of those deep constitutional roots that impart strength to the discretionary function exception.

The decision of the district court is affirmed.

AFFIRMED.