[No. A098044. First Dist., Div. Four. Nov. 26, 2003.]

DAVID TAYLOR et al., Plaintiffs and Appellants, v.
JOHN CRANE INC., Defendant and Appellant.

[No. A098587. First Dist., Div. Four. Nov. 26, 2003.]

DAVID TAYLOR et al., Plaintiffs and Respondents, v.
JOHN CRANE INC., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.A.–II.D.

**COUNSEL**

Hassard Bonnington, Philip S. Ward, Robert L. Nelder and Helene E. Swanson, .for Defendant and Appellant.

The Wartnick Firm, Harry F. Wartnick, Stephen M. Tigerman; Law Offices of Daniel U. Smith and Daniel U. Smith for Plaintiffs and Appellants and for Plaintiffs and Respondents.

### OPINION

**RIVERA, J.**—Defendant John Crane Inc., appeals a jury verdict in favor of plaintiffs David Taylor (Taylor) and his wife Susan Taylor, based on Taylor's exposure to asbestos-containing products manufactured by defendant. Plaintiffs cross-appeal, contending the jury should not have allocated fault to the United States Navy in calculating defendant's proportionate share of fault. Finding no error, we affirm the judgment.

## I.  FACTUAL AND PROCEDURAL HISTORY

Taylor served in the Navy as a machinist mate from 1962 to 1971 and again from 1973 to 1976. He worked for the Union Pacific Railroad for approximately six months in the period between his Navy enlistments. He was in the naval reserve from 1976 through 1986. He stopped working in February 2001 because of ill health. He was diagnosed with mesothelioma and the same month was told his life expectancy was a matter of weeks or months.

### A.  *Taylor's Work in the Navy*

Taylor testified at trial that, among his other duties as a machinist mate on Navy submarines and surface ships, he performed maintenance on valves (which regulate the flow of steam and fluids through pipes) and flanges (the joints between pipe sections). His work on valves included removing and installing the asbestos-containing packing that was used as a sealant to prevent steam from leaking out of the valve. In doing this work, at times he had to brush debris from the packing gland and blow into the valve to remove the debris; some of the dust that was generated would blow back into his face. His work on flanges included installing and removing the spiral-wound and sheet gaskets that seal the pipe joints. During the course of this work, he had to remove debris from the flange, sometimes with a wire brush. Some of the valves and flanges were above his head as he worked, and debris fell on him. He cleaned up the debris by sweeping it up with a broom and dustpan. He did not wear protective gear during this work.

### B.  *Defendant's Products*

Defendant manufactures sealing devices, including valve packing. Some of its packing products contain asbestos. During the period 1963 to 1984, defendant sold both asbestos-containing and nonasbestos-containing packing to the Navy. During the same time period, defendant also sold asbestos-containing gasket material, which had been manufactured elsewhere but contained defendant's logo.

During Taylor's time in the Navy, he worked with defendant's products. The evidence at trial indicated that Taylor also worked with parts made by other manufacturers.

## C. *The Present Action*

Taylor and his wife brought this action in San Francisco Superior Court on April 5, 2001, naming John Crane Inc. (defendant), and multiple other defendants. Trial proceeded against defendant, and on December 14, 2001, the jury returned a special verdict in favor of plaintiffs. The jury found Taylor's economic damages to be $1,010,849, his noneconomic damages to be $1,790,000, and Susan Taylor's noneconomic damages to be $229,000. Defendant was found to be 31 percent responsible for plaintiffs' injuries; the Navy, which was not a party to the action, was found to be 16 percent responsible. The remainder of the responsibility was allocated to other entities that also were not parties to the trial.

Judgment was entered on December 20, 2001, and amended on December 24, 2001. Defendant moved for a new trial. The motion was denied on March 1, 2002. On March 4, 2002, defendant appealed the December 20, 2001, judgment and the December 24, 2001, amended judgment (appeal No. A098044). On March 26, plaintiffs cross-appealed to the extent the judgments reduced their damages by the fault allocated to the United States Navy. A second amended judgment on the special verdict was filed on April 11, 2002. Defendant appealed from the order denying a new trial and from the second amended judgment on April 17, 2002 (appeal No. A098587). The appeals were consolidated on July 3, 2002.

## II. DISCUSSION

A.–D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## E. *Cross-appeal*

Plaintiffs argue on cross-appeal that the trial court erred in allowing the jury to allocate fault to the Navy. The verdict form asked, "Assuming the combined negligence and fault of the defendant and of all other persons, companies and entities whose negligence and fault contributed to the plaintiff's injury to be 100 %, what percentage of such combined negligence and fault is attributable to the defendant and to such other persons, companies or entities whose negligence and fault was a cause of the plaintiff's injury." One of the lines on the form allowed the jury to attribute fault to the Navy. The jury allocated 31 percent fault to defendant, 16 percent to the Navy, and

---

*See footnote, *ante*, page 1063.

the remaining amount to other entities.[6] Based on this allocation, the second amended judgment awarded plaintiffs 31 percent of their total noneconomic damages.

Plaintiffs contend the Navy was immune from liability and, as a result, it was error to allocate fault to the Navy for purposes of calculating defendant's proportionate share of their noneconomic damages. They ask us to modify the judgment to eliminate the fault or negligence allocated to the Navy and to increase that allocated to defendant.

### 1. *Immunity of Navy*

Plaintiffs rely on two theories of immunity. First, plaintiffs cite the discretionary function immunity, an exception to the Federal Tort Claims Act, that bars claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." (28 U.S.C. § 2680(a).) This exception has been held to bar actions based on the former Veteran's Administration's negligent failure to inspect a house for asbestos before sale (*Kane v. U.S.* (8th Cir. 1994) 15 F.3d 87, 88–89); the government's negligence in failing to warn of the risk of asbestos on ships (*Sea-Land Service, Inc. v. U.S.A.* (3d Cir. 1990) 919 F.2d 888, 892–893); the government's alleged negligence in constructing, operating, and maintaining asbestos-containing ships (*Gordon v. Lykes Bros. S.S. Co., Inc.* (5th Cir. 1988) 835 F.2d 96, 99–100 (*Gordon*)); and the government's lack of due care in promulgating a policy for asbestos safety in shipyards or in having no policy or program at all on the issue (*Shuman v. United States* (1st Cir. 1985) 765 F.2d 283, 290).

Plaintiffs also contend the doctrine announced in *Feres v. United States* (1950) 340 U.S. 135 [95 L.Ed. 152, 71 S.Ct. 153] (*Feres*) and *Stencel Aero Engineering Corp. v. U.S.* (1977) 431 U.S. 666 [52 L.Ed.2d 665, 97 S.Ct. 2054] (*Stencel*) confers immunity on the Navy. In *Feres, supra,* 340 U.S. at page 146, the United States Supreme Court declared: "[T]he Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." The Supreme Court extended the reach of the *Feres* doctrine in *Stencel* to conclude that a third party indemnity cross-claim against the government for injuries the plaintiff had suffered during military service was barred. (*Stencel, supra,* 431 U.S. at pp. 667, 673.) In doing so, the court explained the factors that underlie the *Feres* doctrine: the need for a uniform system of compensation for members of the armed services; the fact that the Veterans' Benefit Act

---

[6] The Navy was not a defendant in this action.

establishes, "as a substitute for tort liability, a statutory 'no fault' compensation scheme which provides generous pensions to injured servicemen, without regard to any negligence attributable to the Government"; and the disciplinary problems that would result if soldiers could sue their superiors for negligent orders or negligent acts committed in the course of military duty. (*Stencel*, at pp. 671–672, citing *Feres, supra*, 340 U.S. at p. 143 and *United States v. Brown* (1954) 348 U.S. 110, 112 [99 L.Ed. 139, 75 S.Ct. 141].)[7]

Defendant disputes plaintiffs' claim that the Navy was immune under either the discretionary immunity exception or the *Feres/Stencel* rule. We do not decide the issue because we conclude that, even assuming the Navy was immune, the trial court properly allowed the fault of the Navy to be taken into account in allocating responsibility for plaintiffs' injuries.

### 2. *Allocation of Fault Under Proposition 51*

Several cases have considered the allocation of responsibility for noneconomic damages to an absent party in light of Proposition 51 (Civ. Code,[8] § 1431.2 and amended § 1431). Section 1431.2, subdivision (a) provides that, in actions for wrongful death, personal injury, or property damage based on comparative fault, "the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount." (See *DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 600 [7 Cal.Rptr.2d 238, 828 P.2d 140] (*DaFonte*).) Our Supreme Court has explained the purpose of this rule: " '[T]he measure quite clearly is simply intended to limit the potential liability of an individual defendant for noneconomic damages to a proportion commensurate with that defendant's personal share of fault.' " (*Id.* at p. 603, quoting *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1204 [246 Cal.Rptr. 629, 753 P.2d 585].)

The plaintiff in *DaFonte* was injured by equipment while on the job; he successfully sought damages from the manufacturer of the equipment. In the trial court, the award of noneconomic damages against the manufacturer was reduced by 45 percent, the amount attributable to the fault of the employer, which was immune from liability for work-related injuries under California's workers' compensation law. (*DaFonte, supra*, 2 Cal.4th at pp. 596–598.) The Supreme Court agreed this procedure was proper, concluding that Proposition 51 "eliminates a third party defendant's joint and several liability to an

---

[7] The parties have not directed our attention to anything in the record indicating whether Taylor received any compensation from the Navy for his illness.

[8] All subsequent statutory references are to the Civil Code.

injured employee for unpaid noneconomic damages attributable to the fault of the employer, who is statutorily immune from suit." (*DaFonte*, at p. 596.) There was no exception for damages "*attributable to the fault of persons who are immune from liability* and have no mutual joint obligation to pay missing shares. [Italics added.] On the contrary, section 1431.2 expressly affords relief to every tortfeasor who *is* a liable 'defendant,' and who formerly *would* have had full joint liability." (*Id.* at p. 601.) Therefore, the court rejected the plaintiff's contention that Proposition 51 did not permit apportionment of fault to absent or immune tortfeasors, concluding instead that "the only reasonable construction of section 1431.2 is that a 'defendant['s]' liability for noneconomic damages cannot exceed his or her proportionate share of fault *as compared with all fault responsible for the plaintiff's injuries*, not merely that of 'defendant[s]' present in the lawsuit." (*DaFonte*, at p. 603.)

Plaintiffs contend, however, that it is not *DaFonte* but *Richards v. Owens-Illinois, Inc.* (1997) 14 Cal.4th 985 [60 Cal.Rptr.2d 103, 928 P.2d 1181] (*Richards*) that controls here. In *Richards*, the Supreme Court had occasion to consider the interplay between Proposition 51 and a different "immunity" statute, section 1714.45. (*Richards*, at p. 989.) That statute provided that "a manufacturer or seller 'shall not be liable' in a 'product liability action' for harm caused by the ingestion of a 'common consumer product intended for personal consumption, such as . . . tobacco' which is 'inherently unsafe' and consumed with 'ordinary [community] knowledge' of its danger." (*Id.* at p. 988.)[9]

Richards, a smoker, sued Owens-Illinois for asbestos-related injuries. (*Richards, supra*, 14 Cal.4th at pp. 989–990.) Relying on *DaFonte*, Owens-Illinois argued "even if the tobacco companies are themselves immune from liability for their products' contribution to plaintiff's lung disease, these companies' proportionate responsibility for the injury—i.e., their comparative 'fault'—necessarily reduces Owen-Illinois's own degree of 'fault' for the same injury." (*Richards*, at p. 997, italics omitted.) Therefore, the defendant argued, the comparative fault of the tobacco companies should diminish the defendant's proportionate share of liability for noneconomic damages under Proposition 51. (*Ibid.*)

The court in *Richards* began its analysis by scrutinizing the immunity statute. It concluded that section 1714.45 did not merely confer immunity from *liability* for tortious conduct, but constituted a determination by the Legislature that a company supplying tobacco does not engage in tortious conduct because it *breaches no duty* to consumers. (*Richards, supra*, 14

---

[9] In 1997, the Legislature amended section 1714.45, subdivision (a) to eliminate the reference to tobacco. (Stats. 1997, ch. 570, § 1.)

Cal.4th at p. 1000.) "In other words, under the conditions described by section 1714.45, a tobacco supplier simply commits no tort against knowing and voluntary smokers by making cigarettes available for their use." (*Ibid.*; see also *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 837 [123 Cal.Rptr.2d 40, 50 P.3d 751].)

Having ascertained the meaning of section 1714.45, the court distinguished *DaFonte*, reasoning as follows: Under Proposition 51 the defendant's fault must be compared to all other fault. Because an employer's tort immunity under the workers' compensation scheme "does not imply any absence of legal 'fault' or tortious responsibility in an employer whose act or omission contributed to the harm," the immune employer's share of responsibility for a plaintiff's injury is included in ascertaining comparative *fault*. (*Richards, supra*, 14 Cal.4th at p. 998 [60 Cal.Rptr.2d 103, 928 P.2d 1181].) In contrast, the tobacco companies' immunity "arises from a premise which is . . . inconsistent with the allocation of legal 'fault' to such entities under Proposition 51, as contemplated in *DaFonte*." (*Ibid.*) Consequently, no " 'fault' " can be assigned to any acts of the tobacco companies that contributed to plaintiff's harm. (*Id.* at p. 1003.)

Plaintiffs do not address the *Richards* rationale. They assert only that the result in *Richards* applies here and the result in *DaFonte* does not. Plaintiffs contend that *DaFonte* is "unique" in that it "rested on prior Supreme Court decisions holding 'in essence, that an employee's damage judgment against third parties must be reduced by an amount attributable to the employer's proportionate share of·fault, up to the amount of workers' compensation benefits paid. . . . [T]hird party defendants remained jointly and severally liable to the injured employee for all damages attributable to the employer's fault which were not covered by workers' compensation benefits.' *DaFonte*, 2 Cal.4th at 599 . . . ." Therefore, plaintiffs argue, the Navy cannot be assigned a portion of the fault in this case because defendant has failed to show that "under *Feres/Stencel* a third party defendant [may] reduce its liability by the federal government's share of fault, up to the amount of veteran's benefits paid to the plaintiff."

Plaintiffs' reading of *DaFonte* is simply wrong. The quoted passage does not constitute the underpinning for the court's holding. It is, rather, part of a recital of the *history* of contributory and comparative fault, commencing with *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226], and continuing to the passage of Proposition 51 in 1986. (*DaFonte, supra*, 2 Cal.4th at pp. 597–600.) The next paragraph in *DaFonte* makes this crystal clear: "In sum, by 1986 the courts had eliminated certain inequities of the former tort recovery system, but so-called 'deep pocket' defendants whose fault was slight could still be saddled with large damage awards mainly attributable to the greater fault of others who were able to escape their full

proportionate contribution. [Citation.] *Proposition 51 sought to modify this system of recovery.*" (*Id.* at p. 599, italics added.) The court went on to conclude that under Proposition 51 "the plaintiff alone now assumes the risk that a proportionate contribution cannot be obtained from each person responsible for the injury." (*DaFonte*, at p. 600.)

Akin to plaintiffs' argument here, the plaintiff in *DaFonte* contended that, absent an exception to Proposition 51 for third party suits by injured workers, "the 'delicate' preexisting balance among the rights of employee, employer, and third party tortfeasor" will be destroyed. (*DaFonte, supra,* 2 Cal.4th at p. 603.) But as the court decisively noted, "[this] principal effect is *precisely that intended by the initiative*: defendants no longer have to pay an injured employee's noneconomic damages caused by the fault of another, and the employee, like any other tort victim, bears the resulting risk of loss. No substantial reason is asserted, let alone a 'compelling' one, why Proposition 51's manifest policy should not apply in this particular situation." (*Id.* at pp. 603–604, italics added, fn omitted.)

■ *Richards* and *DaFonte* establish that under Proposition 51, fault will be allocated to an entity that is immune from *paying for* its tortious acts, but will not be allocated to an entity that is not a tortfeasor, that is, one whose actions have been declared not to be tortious. We are aware of no declaration stating the government breaches no duty to military personnel when it exercises its discretion or when a serviceman is injured in the course of military service. Indeed, the cases make clear the government is immune from claims based on such conduct *even if it has been negligent.* (See, e.g., *Stencel, supra,* 431 U.S. at pp. 668–672; *Gordon, supra,* 835 F.2d at p. 100.) Accordingly, whatever the merits of plaintiffs' position that the Navy was immune under either the discretionary immunity exception or the *Feres/Stencel* doctrine, we conclude the trial court did not err in allowing the jury to allocate fault to the Navy for purposes of determining defendant's proportionate share of responsibility.[10]

### III. DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

Kay, P. J., and Reardon, J., concurred.

---

[10] In light of this conclusion, we do not reach defendant's claim that plaintiffs waived their right to challenge the jury's apportionment of fault to the Navy.