Filed 9/2/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN DOE (No. 0136), | |
| Plaintiff and Appellant, | G064562 |
| v. | (Super. Ct. No. 30-2022-01286908) |
| COUNTY OF ORANGE et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Richard Oberholzer, Judge. (Retired judge of the Kern Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Reversed and remanded with directions.

Adkisson Pitet and Carl A. Berthold, Jr., for Plaintiff and Appellant.

Gutierrez, Preciado & House, Calvin House and Natalia Anthony for Defendants and Respondents.

\*       \*       \*

Welfare and Institutions Code section 5328 makes "all information and records obtained in the course of providing services . . . to either voluntary or involuntary recipients . . . confidential." (Welf. & Inst. Code,[1] § 5328, subd. (a).) Section 5330 authorizes a person who received such services to bring an action against anyone who unlawfully disclosed such records. (§ 5330, subd. (a).) If the records were negligently disclosed, the statute awards the aggrieved party $1,000 and actual damages. (§ 5330, subd. (b)(1) & (2).) However, if the records were "willfully and knowingly" disclosed, the statute awards the aggrieved party the greater of $10,000 or three times the amount of the actual damages. (§ 5330, subd. (a)(1) & (2).)

Robert G. Reyna (Reyna), who worked for the Orange County Sheriff's Department, unlawfully disclosed John Doe's (Doe) confidential record to Doe's sister and her attorney who used it to threaten Doe to dismiss a lawsuit Doe brought against his sister. Doe brought an action against Reyna and the County of Orange (the County) in which a jury found Reyna willfully and knowingly disclosed the record. However, the jury apportioned 25 percent of Doe's damages to Doe's sister and her attorney based on their conduct. The trial court then granted Reyna and the County's motion for partial judgment notwithstanding the verdict ruling that there was not substantial evidence to support the finding of willfulness; the court, as a result, did not treble damages. The trial court apportioned both economic and noneconomic damages and entered a judgment in favor of Doe.

Doe appeals arguing the trial court erred in concluding there was not substantial evidence to support the jury's finding and in apportioning

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

2

damages. On appeal, all parties agree Reyna unlawfully disclosed the confidential record. But the parties disagree over what it means to "willfully and knowingly" disclose confidential records within the meaning of section 5330. As we explain, it means Reyna intentionally released Doe's confidential record to a person Reyna knew was not entitled to the record and the disclosure was otherwise unlawful. We then conclude the trial court erred in granting Reyna and the County's motion for partial judgment notwithstanding the verdict.

Last, although Reyna willfully and knowingly released Doe's confidential record, he was not an intentional tortfeasor. Reyna and the County, thus, were entitled to have Doe's noneconomic damages apportioned to other tortfeasors—but not Doe's economic damages.

FACTS

In 2018, Doe was placed on an involuntary 72-hour hold pursuant to section 5150. The Orange County Sheriff's Department generated a confidential record of the incident. In 2021, a dispute arose between Doe and his sister over their father's estate. Doe filed a lawsuit for elder abuse against his sister. During the lawsuit, Doe learned his sister's attorney had obtained a copy of the 2018 confidential record. The attorney threatened to disclose the record unless Doe dismissed the lawsuit. Doe believed his sister and her attorney were blackmailing him which made him fearful.

Reyna testified he worked for the sheriff's department as an office specialist where he reviewed incoming requests for information and determined whether to release such records. In 2021, Reyna received a request for two reports from Doe's sister. The first was a report of a welfare check in which Doe's sister was the caller, and the second was for the confidential record. Doe's sister was entitled to the welfare check report, but

3

not the confidential record. Reyna knew Doe's sister was not entitled to the confidential record, but he released it to her anyway. Reyna made "a judgment call"; he believed Doe's sister was "concerned" about Doe and testified that his "heart got in the way."

The parties agreed Reyna's disclosure was unlawful. The issue for the jury was whether the disclosure was willful or negligent. The court instructed the jury that the disclosure was "'wil[l]ful'" if Reyna "knew of his legal obligations and intentionally declined to follow them. However, a violation is not willful if you find that Robert Reyna reasonably and in good faith believed that the facts did not require him to comply . . . ." The trial court also instructed the jury that it could apportion a percentage of Doe's damages to Doe's sister and her attorney if they were "at fault," and if this fault "was a substantial factor in causing John Doe's harm."

The jury found Reyna willfully disclosed the confidential record, but determined Doe's sister and her attorney were responsible for 25 percent of Doe's damages. The jury awarded Doe $29,000 in economic damages and $40,000 in noneconomic damages.

Reyna and the County filed a motion for partial judgment notwithstanding the verdict. They claimed there was not substantial evidence to support the jury's determination that the disclosure was willful and knowing. The trial court granted the motion and therefore did not award treble damages. Instead, the trial court ruled the entire $69,000 was subject to apportionment and entered a judgment for $51,750 (75 percent of $69,000) against Reyna and the County.

DISCUSSION

I.

THERE WAS SUBSTANTIAL EVIDENCE REYNA'S DISCLOSURE OF
DOE'S CONFIDENTIAL RECORD WAS WILLFUL AND KNOWING

Doe contends the trial court erred in granting Reyna and the County's motion for partial judgment notwithstanding the verdict. The parties disagree as to what willfulness means within the context of section 5330. Doe believes it means "'a purpose or willingness to commit the act or engage in the conduct in question.'" Reyna and the County argue willfulness requires knowledge harm will follow or at least reckless disregard of a risk of harm. As we explain, Doe's interpretation is closest.

A. *Standard of Review*

""""A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support. [Citation.] [¶] . . . As in the trial court, the standard of review [on appeal] is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion."""" (*Webb v. Special Electric Co., Inc.* (2016) 63 Cal.4th 167, 192.) In reviewing the evidence, we draw all reasonable inferences in Doe's favor and disregard evidence that conflicts with any evidence which supports the verdict. (*Ibid.*) "Our determination as to the requisite substantial evidence is de novo." (*Lurner v. American Golf Corp.* (2023) 97 Cal.App.5th 121, 133.) We similarly review legal issues, such as the interpretation of a statute, de novo. (*Ibid.*)

B. *Willfulness Denotes Intentionally Committing the Act in Question*

Section 5330 does not define the phrase "willfully and knowingly." Therefore, we must turn to principles of statutory construction to

5

determine its meaning. "We begin our analysis by acknowledging that '[t]he goal of statutory construction is to ascertain and effectuate the intent of the Legislature.' [Citation.] Ordinarily, the language of the statute provides the most reliable indication of legislative intent. [Citation.] But when the statutory language is ambiguous, '[we] may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes.' [Citation.]" (*Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 724 (*Calvillo-Silva*) disapproved on other grounds by *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, fn. 19.)

The Lanterman-Petris-Short Act (§ 5000 et seq.) (the Act), the statutory scheme relevant here, "provides for the prompt evaluation and treatment of mentally disordered persons, developmentally disabled persons and persons impaired by chronic alcoholism, while protecting public safety and safeguarding individual rights through judicial review." (*In re Qawi* (2004) 32 Cal.4th 1, 16.) The Act permits law enforcement to take an individual into custody for a period of up to 72 hours if that person, because of a mental health disorder, is a danger to themselves. (§ 5150, subd. (a).)

To accomplish its objectives, the Act makes "[a]ll information and records obtained in the course of providing services under [the Act] . . . confidential." (§ 5328, subd. (a).) "Information and records shall be disclosed only" in specifically enumerated circumstances. (*Ibid.*) One of the purposes of section 5328 is to protect the person from the undesired publicity, embarrassment, or more serious consequences which disclosure could bring. (*In re S.W.* (1978) 79 Cal.App.3d 719, 721.) "Section 5328's confidentiality protections are designed 'to encourage persons . . . to seek treatment on a

6

voluntary basis." (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 953 (*State Dept. of Public Health*).)

The Legislature authorized a person to bring a civil action against anyone who "willfully and knowingly" or "negligently" released "confidential information or records concerning him or her in violation of [the Act]." (§ 5330, subds. (a) & (b).) In the event the release was negligent, the aggrieved party is entitled to recover his or her actual damages plus $1,000. (§ 5330, subd. (b)(1) & (2).) If the release was willful and knowing, the aggrieved party is entitled to the greater of $10,000 or three times the amount of his or her actual damages. (§ 5330, subd. (a)(1) & (2).) In either scenario, "the plaintiff shall recover court costs and reasonable attorney's fees as determined by the court." (§ 5330, subd. (d).)

We first start by defining the term "knowingly" as that is used in section 5330. The Penal Code defines "'[k]nowingly'" as "a knowledge that the facts exist which bring the act or omission" within the meaning of the statute. (Pen. Code, § 7, subd. (b)(5).) While section 5330 is not a penal statute, "the Penal Code definition is nonetheless persuasive in determining the intent of the Legislature in using that word in other statutes." (*Brown v. State Department of Health* (1978) 86 Cal.App.3d 548, 554.) Therefore, "knowingly" as used in section 5330 relates to the defendant's knowledge of the fact that the person requesting the record is not entitled to it under the Act.

The concept of willfulness, on the other hand, is not so "easily captured in a single, uniformly applicable formula." (*Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 182 (*Kwan*). The Penal Code defines willfulness as "'simply a purpose or willingness to commit the act, or make the omission referred to,' [but] there is no shortage of cases

7

construing the term, in penal statutes, as conveying more than mere volition." (*Ibid.*)

Civil cases contain similar nuances. In *Goodhew v. Industrial Acc. Com.* (1958) 157 Cal.App.2d 252, the plaintiff sued her husband's employer for its "wil[l]ful failure" to secure payment (from insurance or otherwise) for compensation "'recoverable for [the] injury or death'" of her husband. (*Id.* at p. 254.) The Court of Appeal held the term "wil[l]ful" simply meant "'that one intentionally fail[ed] or refuse[d] to perform an act which [was] required to be done.'" (*Id.* at p. 257.) Because the employer "intentionally and deliberately failed to secure coverage," the employer violated the statute. (*Ibid.*)

It is evident the meaning of "willful" is specific to the statutory scheme at issue, and we must interpret the word in light of the statute's purpose. Here, there is no shortage of language in the Act emphasizing its goal of ensuring privacy to anyone receiving services pursuant to it, such as its specific guarantee of "[a] right to dignity, privacy, and humane care" (§ 5325.1, subd. (b)), its requirement that any court-ordered evaluation "be carried out with the utmost consideration for the [person's] privacy and dignity" (§ 5200), and its delineated Legislative intent to protect the personal rights of those subject to the Act (§ 5001, subd. (h)), to name a few.

But the Act does not prohibit all disclosures of confidential records. "[T]he bar against disclosure is not absolute but is subject to numerous exceptions, including disclosure to the courts." (*Devereaux v. Latham & Watkins* (1995) 32 Cal.App.4th 1571, 1585, disapproved on other grounds by *Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 785, fn. 7.) To strike a balance between privacy protections and the Act's other goals of guaranteeing public safety, providing prompt

8

evaluation and treatment of persons with mental health disorders, and encouraging the full use of all agencies and professional personnel available, the Act carefully "enumerates 25 specific exceptions" to its disclosure bar. (*State Dept. of Public Health, supra*, 60 Cal.4th at p. 952.) Examples include "[i]n communications between qualified professional persons" (§ 5328, subd. (a)(1)(A)), to courts, "as necessary to the administration of justice" (§ 5328, subd. (a)(6)), and to law enforcement officers in specified scenarios (§ 5328, subd. (a)(20)(A)).

Thus, entitlement to recovery under section 5330 must not hinge on the wrongdoer's bad faith, intent to harm, or knowledge of some sort of consequential harm. Instead, the harm occurs the moment a confidential record is placed in the hands of someone not entitled to it—everyone is presumed to know as much. Willfulness, then, is tied to the *act* of disclosing the record—it simply refers to the fact someone intentionally released records which are otherwise confidential. Therefore, the protected party does not need to show the act was coupled with bad faith, ill intent, or the knowledge that further harm would flow from the wrongful disclosure.

To summarize, taken together with the knowing requirement, a person "willfully and knowingly" releases confidential records when they intentionally release information or records to a person they know is not entitled to the records and the disclosure otherwise violates the Act.

C. *There Is Substantial Evidence To Support a Finding of Willfulness*

There was substantial evidence Reyna willfully and knowingly released Doe's confidential records. Reyna testified he knew Doe's sister was not allowed to have the record, but he released it to her "because [his] heart got in the way . . . [and he] was concerned that [Doe's sister may] be as well concerned." Although Reyna may have had good intentions, the Legislature

9

only permits releasing confidential records in certain situations, and Reyna's actions, albeit well-intended, were nonetheless willful and knowing.

Therefore, the court erred in granting Reyna and the County's motion for partial judgment notwithstanding the verdict.

## II.

### THE TRIAL COURT DID NOT COMMIT ERROR WHEN IT INSTRUCTED THE JURY ON APPORTIONMENT OF LIABILITY

Next, Doe argues the trial court should not have instructed the jury on apportioning liability. He bases this contention of error on two grounds: (1) apportionment does not apply to intentional tortfeasors, which Reyna was; and (2) apportionment does not apply as Doe's sister and her attorney were not tortfeasors. We disagree on both fronts.

Although liability for economic damages amongst multiple tortfeasors is joint and several, it is only several when it comes to noneconomic damages. (Civ. Code, § 1431.2, subd. (a).) "Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount." (Civ. Code, § 1431.2, subd. (a).)

However, Civil Code section 1431.2, subdivision (a), "does not authorize a reduction in the liability of intentional tortfeasors for noneconomic damages . . . ." (*B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 29 (*B.B.*).) Thus, if Reyna was an intentional tortfeasor, the jury had no right to apportion a percentage of Doe's damages to Doe's sister and her attorney.

10

## A. *Reyna Was Not an Intentional Tortfeasor*

Intentional torts involve "the deliberate or reckless harming of another." (*Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85, 106 (conc. & dis. opn. of Mosk, J.); *Willard v. Caterpillar, Inc.* (1995) 40 Cal.App.4th 892, 917, disapproved on other grounds by *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 18, fn. 4 [intentional tort requires the actor to intend to cause the harm].) "An intentional tort is one in which the actor intends to produce the harm that ensues; it is not enough that he intends to perform the act. He intends to produce the harm when he desires to bring about that consequence by performing the act." (Rest.2d Torts, § 870, com. b.; see also *Willard, supra*, 40 Cal.App.4th at pp. 913–914 [quoting language]; *McCollum v. CBS, Inc.* (1988) 202 Cal.App.3d 989, 1006 [insufficient that tortfeasor "intentionally did a particular act. It must also be shown that such act was done with the intent to cause injury"].)

Here, although the jury found Reyna knew it was unlawful to disclose the record and he did so anyway, there was no finding Reyna intended to harm Doe. Nor does the record bear such a conclusion. The only evidence on the issue came from Reyna who testified he disclosed the record because he believed Doe's sister was concerned about Doe's well-being. Therefore, if anything, the record establishes Reyna acted with an intent to help Doe, not to harm him. As such, he was not an intentional tortfeasor and apportionment was allowed.

## B. *Apportionment Was Proper as to Doe's Sister and Her Attorney*

Alternatively, Doe contends apportionment does not apply because Doe's sister and her attorney were not at "fault" as that term is used in Civil Code section 1431.2. Doe claims "fault" requires more than just contributing to the injury; "it means breaching a duty owed to the plaintiff by

11

'law or contract.'" And because Doe's sister's and her attorney's conduct took place within the context of litigation, it was privileged. Therefore, as Doe's argument goes, they could not have breached a duty owed to Doe and cannot be assigned some portion of the liability. In making this argument, Doe primarily relies on *Wilson v. Ritto* (2003) 105 Cal.App.4th 361 (*Wilson*).

*Wilson* does not apply here. In *Wilson,* the plaintiff sued her podiatrist for malpractice stemming from a bunionectomy on her foot. (*Wilson, supra*, 105 Cal.App.4th at pp. 364–365.) Following the bunionectomy, the plaintiff experienced great pain and a clicking in her foot. (*Id.* at p. 364) The defendant performed successive corrective, but unsuccessful, surgeries. (*Ibid.*) After one of the corrective surgeries, the plaintiff contacted an attorney who referred her to an orthopedic surgeon. (*Id.* at p. 365.) The orthopedic surgeon performed a procedure on the plaintiff's foot, resulting in it becoming infected. (*Ibid.*) The defendant requested to add the orthopedic surgeon to the special verdict form as a joint tortfeasor, but the trial court denied the request, ruling the defendant did not establish that the surgeon violated the medical standard of care. (*Id.* at p. 366.) The Court of Appeal agreed, holding that "fault" within the meaning of Civil Code section 1431.2, required more than just showing another's conduct "affected" the plaintiff's injury. (*Id.* at p. 369.) In a medical malpractice case, "fault is measured by the medical standard of care." (*Ibid.*)

Although *Wilson* is helpful in understanding that fault requires more than just causation, courts have limited its holding to the rule "that a nonparty medical doctor cannot be found comparatively at fault in a personal injury action unless the defendant proves with expert testimony the doctor failed to meet the applicable standard of care." (*Chakalis v. Elevator*

12

*Solutions, Inc.* (2012) 205 Cal.App.4th 1557, 1561; see also *Vollaro v. Lispi* (2014) 224 Cal.App.4th 93, 102 [same].)

Instead, what we must decide is what effect, if any, the litigation privilege has on the issue of apportioning liability to a nonparty tortfeasor. We conclude it has none. In understanding our conclusion, a review of *Richards v. Owens-Illinois, Inc.* (1997) 14 Cal.4th 985 (*Richards*), abrogated by statute as stated in *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 837, and *Taylor v. John Crane, Inc.* (2003) 113 Cal.App.4th 1063 (*Taylor*) is helpful.

In *Richards*, the plaintiff worked at a shipyard and sued the defendant and numerous other manufacturers claiming their products exposed him to asbestos and caused him respiratory injury and fear of cancer. (*Richards, supra*, 14 Cal.4th at p. 989.) At trial, there was evidence the plaintiff was a longtime smoker who had an obstructive airway disease most likely due to smoking. (*Id.* at p. 990.) The defendant sought to allocate a share of the plaintiff's damages to cigarette manufacturers who shared "'fault'" for the plaintiff's injuries because they supplied harmful tobacco products to the plaintiff. (*Id.* at p. 991.) But there was a statute "provid[ing] that a manufacturer or seller 'shall not be liable' in a 'product liability action' for injury or death caused by a product which (1) '[was] *inherently unsafe* . . . such as . . . *tobacco* . . . .]'" (*Id.* at p. 998.) The defendant argued that the statute did not bar apportionment because it only granted immunity for "*direct 'liab[ility]*.'" (*Ibid.*) The California Supreme Court disagreed, holding the statute did more and declared the tobacco manufacturers "breache[d] no duty and [committed] no tort, [and therefore] the statute also preclude[d] indirect assignment of comparative 'fault' or responsibility to such entities for purposes of [apportionment]." (*Id.* at p. 1001.)

13

In *Taylor*, the plaintiff was a former serviceman with the United States Navy who sued the manufacturer of a product sold to the Navy which contained asbestos. (*Taylor, supra*, 113 Cal.App.4th at p. 1065.) The jury returned a verdict for the plaintiff but allocated 16 percent of the fault to the Navy which was not a party to the action. (*Id.* at p. 1066.) Plaintiff appealed, arguing the Navy was immune from liability and thus it was improper to allocate fault to it. (*Id.* at p. 1067.) The plaintiff relied on a statute which "bar[red] claims 'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty'" and United States Supreme Court cases declaring the government was immune from such claims. (*Ibid.*) The Court of Appeal affirmed the apportionment and distinguished *Richards* on the basis that in *Richards*, the California Supreme Court "concluded that [the immunity statute] did not merely confer immunity from *liability* for tortious conduct, but constituted a determination by the Legislature that a company supplying tobacco does not engage in tortious conduct because it *breache[d] no duty* to consumers." (*Id.* at p. 1069.) Contrary to *Richards*, the statutes and United States Supreme Court cases in *Taylor* granted immunity to the Navy "*even if it ha[d] been negligent.*" (*Id.* at p. 1071.) Put another way, the Navy's conduct breached a duty owed to the plaintiff and, thus, apportionment was proper, even though the Navy was immune from paying for its share of liability.

Turning to the statute here, the Civil Code provides that a publication or broadcast is privileged when made in a judicial proceeding. (Civ. Code, § 47, subd. (b).) This is referred to as the litigation privilege and "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or

14

logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 (*Silberg*).) It "afford[s] litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Id.* at p. 213.)

As in *Taylor,* the litigation privilege does not *eliminate* a duty Doe's sister and her attorney otherwise owed to Doe. Instead, it recognizes the existence of such a duty but prevents the use of protected conduct from forming the basis for a breach of that duty. (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 638, fn. 1 [privilege "preclud[es] use of the protected communications and statements as the basis for a tort action"]; see, e.g., *Silberg, supra,* 50 Cal.3d at p. 214 [the privilege prevents litigants from "attack[ing] the integrity of evidence after the proceedings have concluded"]; *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1276 [litigation privilege prevented use of negligent laboratory tests as basis for action]; *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 973 [litigation privilege defeated claims based on privileged communications].)

Therefore, if there was substantial evidence to support the giving of the instruction on apportionment, the court did not err in doing so. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.) Here, there was substantial evidence Doe's sister and her attorney were at fault and should be apportioned a percentage of liability. It is unlawful for someone to induce fear in another through threat of exposing a secret of that person or imputing to that person a deformity, disgrace, or crime. (Pen. Code, § 519, subds. 3 & 4.) Doe testified he believed his sister and her attorney were blackmailing him with the report and were threatening to disseminate it further. This made him fearful. And there was evidence they were using the record to pressure Doe into dismissing the elder abuse lawsuit he filed against his

15

sister. This constitutes substantial evidence from which the jury could conclude Doe's sister and her attorney unlawfully instilled fear in Doe by threatening to release the report unless he dropped the lawsuit.

## III.

## THE TRIAL COURT ERRED IN APPORTIONING

## LIABILITY FOR DOE'S ECONOMIC DAMAGES

Last, Doe contends the trial court erred in apportioning liability for economic damages because apportionment only applies to noneconomic damages. Reyna and the County agree. We also agree. (Civ. Code, § 1431.2, subd. (a).) The court, therefore, erred.

## DISPOSITION

The jury found Doe suffered $29,000 in economic damages and $40,000 in noneconomic damages. The jury apportioned 25 percent of the noneconomic damages to Doe's sister and her attorney. Thus, as to the noneconomic damages, Reyna and the County were responsible for 75 percent of $40,000 which is $30,000. We then take the $29,000 in economic damages and add it to the $30,000 in noneconomic damages for a total of $59,000. Last, section 5330 required the $59,000 to be trebled bringing the total damage award to $177,000.

We reverse the trial court's order granting Reyna and the County's motion for partial judgment notwithstanding the verdict. On remand, the trial court is ordered to enter an amended judgment in favor of Doe in the amount of $177,000 and against the County and Reyna, jointly and severally.

All parties to bear their own costs incurred on appeal.


SANCHEZ, ACTING P. J.

WE CONCUR:


GOODING, J.


SCOTT, J.