[No. D044470. Fourth Dist., Div. One. May 25, 2006.]

WILLIAM THOMAS et al., Plaintiffs and Appellants, v.
DUGGINS CONSTRUCTION COMPANY, INC., et al., Defendants and
Appellants.

## COUNSEL

David A. Kay; Yeager & Pierson, Judith Y. Pierson, Randy J. Rutten; Singleton & Associates, Terry Singleton and Horacio Barraza for Plaintiffs and Appellants.

Haight Brown & Bonesteel, Jules S. Zeman; Maxie Rheinheimer Stephens & Vrevich and J. Dean Rice for Defendants and Appellants.

## OPINION

**McINTYRE, J.**—The principal issue presented in this case is whether an intentional tortfeasor is entitled to a reduction or apportionment of noneconomic damages under Proposition 51 (otherwise known as the Fair Responsibility Act of 1986 and codified at Civil Code sections 1431 to 1431.5). We answer this question in the negative.

William Thomas and Woodrow C. Taylor (the plaintiffs) sued Duggins Construction Company, Inc. (Duggins), and certain of its employees for injuries they sustained when the scissor lift it sold to their employer collapsed on a construction jobsite. A jury found in the plaintiffs' favor on their claims for breach of implied warranty, negligence and intentional misrepresentation; it awarded Taylor $1.2 million and Thomas $696,000 in damages and found that Duggins and the plaintiffs' employer were each 40 percent responsible for the injuries, while two of Duggins's employees each bore 10 percent responsibility. The jury also found that one of the Duggins's employees made intentional misrepresentations about the scissor lift to plaintiffs' employer in connection with the sale. Thereafter, the court rejected Duggins's arguments that its liability for the plaintiffs' noneconomic damages was subject to apportionment in accordance with Proposition 51 and entered a judgment against Duggins for the entirety of the plaintiffs' damages.

Duggins appeals, contending that: (1) the trial court erred in refusing to apportion its liability for the plaintiffs' noneconomic damages in accordance with Proposition 51; (2) the plaintiffs' pretrial settlement offers to it pursuant to Code of Civil Procedure section 998 (section 998) were invalid because the offers did not address its liability for the plaintiffs' claims against its employees who were named as defendants or for the claim in intervention filed by the worker's compensation carrier that paid workers' compensation benefits to the plaintiffs; and (3) the court erred in determining that the plaintiffs obtained a "more favorable judgment" than their settlement offers. The plaintiffs cross-appeal, arguing that the trial court should have granted their request for a finding that Duggins had specifically agreed the jury's

allocation of fault related solely to their negligence claims and thus was precluded from challenging the court's decision that Proposition 51 was inapplicable.

We conclude the trial court was correct in finding that Proposition 51 does not apply in favor of an intentional tortfeasor as against the plaintiffs or negligent tortfeasors and thus uphold its refusal to apportion the plaintiffs' noneconomic damages, a conclusion that renders Duggins's third argument and the plaintiffs' cross-appeal moot. Further, we hold that Duggins's failure to raise any challenge to the validity of the section 998 settlement offers in the proceedings below waived the issue for purposes of appeal. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 21, 1999, electrical contractor Greg Bentley Electric (Bentley) purchased a used scissor lift for use in its electrical business from Duggins for $2,000. Two days later, the plaintiffs, Bentley employees, were seriously injured when the platform of the lift became uncentered while being raised, causing the lift to tip over and the platform on which they were standing to collapse to the concrete floor 20 to 25 feet below.

In June 1999, the plaintiffs filed this action against Duggins for products liability and general negligence. After Duggins answered, the plaintiffs amended their complaint to name as defendants Duggins employees or agents James Duggins, Russel Roben, Scott Dhalliwal and Doug Calhoun and to add claims for fraud, deceit, willful misconduct and punitive damages. Fremont Compensation Insurance Company (Fremont) filed a complaint in intervention to recover workers' compensation benefits that it had paid to the plaintiffs and filed a notice of lien as to the $86,498.42 it paid to Thomas and $105,894.64 it paid to Taylor. Prior to trial, each of the plaintiffs served Duggins with an offer to settle his claims against it under section 998 (Taylor's offer was for $999,949 and Thomas's offer was for $550,000). Duggins did not accept either of the offers, which made no reference to the plaintiffs' claims against Duggins's employees or Fremont's claim for reimbursement of workers' compensation payments.

At trial, a jury returned a special verdict in favor of the plaintiffs, finding in part that: (1) In selling the lift to Bentley, Duggins made an express or implied warranty that the lift was suitable for Bentley's intended purpose; (2) the lift was not suitable for Bentley's intended purpose and this was a substantial factor in causing the plaintiffs' injuries; (3) defendants Roben and Dhalliwal were employees and agents of Duggins acting within the scope of their employment or agency in selling the lift to Bentley; (4) these same

defendants were negligent in maintaining or repairing the lift and in failing to inform Bentley of problems with it; (5) Dhalliwal intentionally made false representations or failed to disclose important facts about the lift to Bentley and Bentley relied on those representations or concealments; (6) the negligence, fraud or breach of warranty by the defendants caused the plaintiffs' injuries; (7) plaintiff Taylor suffered economic damages of $700,000 and noneconomic damages of $500,000 and plaintiff Thomas suffered economic damages of $456,000 and noneconomic damages of $240,000; and (8) the defendants' allocations of fault for the plaintiffs' injuries were 40 percent each to Duggins and Bentley and 10 percent each to Roben and Dhalliwal. The parties ultimately stipulated that Dhalliwal acted at all relevant times in the course and scope of his employment for Duggins and that the punitive damage claim against Dhalliwal would be dismissed. After trial but before judgment was entered, Fremont dismissed its complaint in intervention, indicating its intent to rely on its lien rather than participate further in the proceedings.

The parties thereafter briefed the issue of whether the plaintiffs' damages were subject to apportionment under Proposition 51. After hearing oral argument, the court ruled that Proposition 51 was inapplicable to the plaintiffs' fraud cause of action; based on its determination, the court declined the plaintiffs' request for a finding that Duggins had stipulated to this point during trial. After the court entered judgment, Duggins moved, unsuccessfully, for a new trial based in part on the contention that Proposition 51 apportionment was required. The plaintiffs each filed a memorandum of costs, seeking to recover ordinary costs, as well as special costs, expert witness fees and prejudgment interest as provided in section 998. Duggins apparently moved to tax the cost bills (although the record before us does not include its motion); the court awarded the plaintiffs special costs and fees under section 998, after partially granting Duggins's motion to tax certain of the costs requested by the plaintiffs. Both parties now appeal.

## DISCUSSION

1. *Failure to Allocate Economic and Noneconomic Damages Under Proposition 51*

█ In 1986, the voters approved Proposition 51, a compromise measure that sought to balance the interests of injured parties who have sustained considerable damages caused by several tortfeasors, one or more of which is insolvent, against unfairness of the existing rule, which might result in a minimally culpable tortfeasor being held liable for the entirety of the plaintiff's damages. (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1198 [246 Cal.Rptr. 629, 753 P.2d 585].) Proposition 51 provides in relevant

part: "In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount." (Civ. Code, § 1431.2, subd. (a).) At the time Proposition 51 was adopted, the law was well established that a tortfeasor who intentionally injured another was not entitled to contribution from any other tortfeasors. (Code Civ. Proc., § 875, subd. (d).) Thus a defendant who committed an intentional tort against the plaintiff was not entitled to a reduction of the judgment because the plaintiff's injuries also resulted from his or her own negligence or the negligence of a third party. (*Allen v. Sundean* (1982) 137 Cal.App.3d 216, 226–227 [186 Cal.Rptr. 863] [third party]; see also *Godfrey v. Steinpress* (1982) 128 Cal.App.3d 154, 176 [180 Cal.Rptr. 95].) The question presented in this case is whether the passage of Proposition 51 changed the existing law regarding the intentional tortfeasor's potential liability for the entirety of the plaintiff's damages, an issue that is not resolved by the existing published authorities. Facing this question for the first time, we conclude that Proposition 51 did not alter the existing principles governing an intentional tortfeasor's liability to an injured plaintiff.

In *Weidenfeller v. Star and Garter* (1991) 1 Cal.App.4th 1 [2 Cal.Rptr.2d 14] (*Weidenfeller*), this court held that a negligent tortfeasor's liability for the plaintiff's noneconomic damages was subject to the limitation of Proposition 51 notwithstanding that the plaintiff's injuries were caused in part by a third party tortfeasor's intentional tort. There, the plaintiff was the victim of an unprovoked attack in a bar parking lot and sued the bar and its owners for negligent failure to provide adequate lighting and security. At trial, the jury found in the plaintiff's favor and attributed 75 percent fault to the assailant, 20 percent fault to the bar and 5 percent fault to the plaintiff. (1 Cal.App.4th at p. 4.) The plaintiff appealed a reduction of the bar's share of the noneconomic damages pursuant to Proposition 51, arguing that Proposition 51 was inapplicable where any tortfeasor was found to have committed an intentional tort. (1 Cal.App.4th at p. 5.)

Noting that the plaintiff was "attempting to transfer the intentional actor's responsibility to the negligent tortfeasor" (*Weidenfeller*, *supra*, Cal.App.4th at p. 7), we rejected his argument, explaining: "Respectfully, we think [the plaintiff's] myopic view of the statute focusing on its words rather than its purpose distorts the meaning of section 1431.2. According to [the plaintiff,] the statute has a limited effect benefitting a negligent tortfeasor only where there are other equally culpable defendants, but eliminating that benefit where the other tortfeasors act intentionally. Stating the proposition reflects

its absurdity. It is inconceivable the voters intended that a negligent tortfeasor's obligation to pay only its proportionate share of the noneconomic loss, here 20 percent, would become disproportionate[,] increasing to 95 percent[,] solely because the only other responsible tortfeasor acted intentionally. To penalize the negligent tortfeasor in such circumstances not only frustrates the purpose of the statute but violates the commonsense notion that a more culpable party should bear the financial burden caused by its intentional act." (*Weidenfeller, supra*, 1 Cal.App.4th at p. 6.) We did acknowledge, however, that comparative fault principles are equally applicable to intentional torts as well as negligence. (*Id.* at pp. 7–8 & fn. 10; see also *Knight v. Jewett* (1992) 3 Cal.4th 296, 313–314 [11 Cal.Rptr.2d 2, 834 P.2d 696] [holding that "the 'comparative fault' doctrine is a flexible, commonsense concept, under which a jury properly may consider and evaluate the relative responsibility of various parties for an injury (whether their responsibility for the injury rests on negligence, strict liability, or other theories of responsibility), in order to arrive at an 'equitable apportionment or allocation of loss' "].)

In *Heiner v. Kmart Corp.* (2000) 84 Cal.App.4th 335 [100 Cal.Rptr.2d 854], the Court of Appeal for the First Appellate District, Division Four, opined (albeit in dicta) that an intentional tortfeasor's liability is not subject to apportionment where the plaintiff's injuries resulted in part from the plaintiff's own contributory negligence. (*Id.* at pp. 348–350.) The court concluded that the adoption of comparative fault principles did not diminish the intentional tortfeasor's liability and that " '[c]ontributory negligence never has been considered a good defense to an intentional tort . . . and it would likewise appear contrary to sound policy to reduce a plaintiff's damages under comparative fault for his "negligence" in encountering the defendant's deliberately inflicted harm.' " (*Id.* at p. 349, quoting Prosser & Keaton, Torts (5th ed. 1984) § 67, pp. 477–478, fn. omitted; see generally Dear & Zipperstein, *Comparative Fault and Intentional Torts: Doctrinal Barriers and Policy Considerations* (1984) 24 Santa Clara L.Rev. 1, 6–11.)

The same policy considerations of deterrence and punishment that bar a reduction of an intentional tortfeasor's liability to reflect the plaintiff's contributory negligence also support the conclusion that an intentional tortfeasor's liability to the plaintiff is not subject to apportionment (i.e., reduction) where the negligence of one or more third party tortfeasors contributed to the injuries. (Code Civ. Proc., § 875, subd. (d); *PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 319 [84 Cal.Rptr.2d 455, 975 P.2d 652]; see *Leko v. Cornerstone Bldg. Inspection Service* (2001) 86 Cal.App.4th 1109, 1120 [103 Cal.Rptr.2d 858]; cf. *Baird v. Jones* (1993) 21 Cal.App.4th 684, 688–693 [27 Cal.Rptr.2d 232] [allowing equitable indemnity between two intentional tortfeasors].) As we acknowledged in *Weidenfeller*, "an intentional actor cannot rely on someone else's negligence

to shift responsibility for his or her own conduct." (*Weidenfeller, supra,* 1 Cal.App.4th at pp. 6–7; see also *Martin By and Through Martin v. U. S.* (9th Cir. 1993) 984 F.2d 1033, 1039–1040.)

■ Here, the jury found that the only party whose liability for the plaintiffs' injuries was based on intentional tort rather than negligence was Dhalliwal. By virtue of the jury's finding and the parties' stipulation that Dhalliwal was acting at all relevant times within the course and scope of his agency or employment for Duggins, Duggins was liable for that intentionally tortious conduct. (*Yamaguchi v. Harnsmut* (2003) 106 Cal.App.4th 472, 481 [130 Cal.Rptr.2d 706] [discussing employer's liability under the doctrine of respondeat superior for the torts of its employees while acting in the course and scope of employment].) Applying the foregoing principles, Duggins's vicarious liability for the intentional torts of one of its employees is not subject to reduction under Proposition 51 based on the jury's finding that Bentley's negligence also contributed to the plaintiffs' injuries. Thus, although Duggins's liability in negligence would have otherwise entitled it to an apportionment of the plaintiffs' noneconomic damages, its vicarious liability for intentional tort was not subject to such a reduction even though the jury concluded that Dhalliwal's intentional misconduct constituted only a 10 percent contributing factor to the plaintiffs' injuries.

For the foregoing reasons, we conclude that the trial court correctly declined to apportion the plaintiffs' noneconomic damages. In light of this conclusion, the plaintiffs' cross-appeal is moot.

## 2. *Award of Section 998 Costs and Fees*

■ Section 998, subdivision (d) provides that if a plaintiff's pretrial settlement offer "is not accepted and the defendant fails to obtain a more favorable judgment or award . . . the court . . . may require the defendant to pay a reasonable sum to cover postoffer costs of the services of [the plaintiff's] expert witnesses . . . , in addition to [the] plaintiff's [ordinary] costs." Additionally Civil Code section 3291 provides that "[i]f the plaintiff makes an offer pursuant to [section 998] which the defendant does not accept prior to trial . . . and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer . . . which is exceeded by the judgment . . . ."

Where the validity of a section 998 offer is challenged, the offering party has the burden of demonstrating that its offer is valid and further such an offer is strictly construed in favor of the party against whom it would operate. (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 799 [101 Cal.Rptr.2d

167].) "[T]he offer must be sufficiently specific to permit the recipient meaningfully to evaluate it and make a reasoned decision whether to accept it, or reject it and bear the risk he may have to shoulder his opponent's litigation costs and expenses." (*Berg v. Darden* (2004) 120 Cal.App.4th 721, 727 [15 Cal.Rptr.3d 829].)

## A.   *The Validity of the Section 998 Offers*

Duggins contends that the plaintiffs' section 998 offers were invalid because they did not address the plaintiffs' claims against its employees or the claim asserted by Fremont, making the offers fatally uncertain. However, the plaintiffs point out, and Duggins admits, that it did not raise any challenge to the offers (or to the plaintiffs' requests for expert witness fees and interest under section 998) on this basis in the proceedings below and thus would normally be deemed to have waived the issue for purposes of appeal. (See *Hale v. Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512].) Duggins nonetheless urges us to exercise our discretion to consider the issue, which involves a question of law arising out of undisputed facts. (See *Yeap v. Leake* (1997) 60 Cal.App.4th 591, 599 [70 Cal.Rptr.2d 680].) Even if we were otherwise inclined to consider the issue for the first time on appeal, however, we would not do so here because Duggins's counsel conceded at the hearing on the motion for a new trial that if Proposition 51 was inapplicable, the plaintiffs were entitled to expert fees in accordance with section 998. Under the circumstances, we conclude that Duggins has waived any challenge to the validity of the plaintiffs' settlement offers under section 998.

## B.   *Effect of Proposition 51 on the Determination of Whether the Plaintiffs Received a More Favorable Judgment*

In its opening brief, Duggins also argues that, if the court apportioned its liability in accordance with Proposition 51, its proportionate liability for the judgment, as reduced by the amount of the workers' compensation lien, would be less favorable to the plaintiffs than their section 998 offer and thus the plaintiffs are not entitled to recover their special costs as awarded by the court. However, in light of our determination that Proposition 51 apportionment principles do not apply to Duggins's liability for the judgment in this case, this argument is now moot.

## DISPOSITION

The judgment is affirmed. The plaintiffs are to recover their costs on appeal.

Huffman, Acting P. J., and McDonald, J., concurred.