[No. A110121. First Dist., Div. Two. Feb. 28, 2007.]

YVETTE MUNOZ et al., Plaintiffs and Appellants, v.
CITY OF UNION CITY et al., Defendants and Respondents.

**COUNSEL**

Law Office of Daniel U. Smith and Daniel U. Smith; Gwilliam, Ivary, Chiosso & Brewer and Steven R. Cavalli for Plaintiffs and Appellants.

Farmer, Murphy, Smith & Alliston, George E. Murphy, Suzanne M. Nicholson; Ferguson, Praet & Sherman and Bruce D. Praet for Defendants and Respondents.

**OPINION**

**KLINE, P. J.**—This is the second appeal in a case arising from the death of Lucilla Amaya in an incident with the Union City police. In the initial trial, the jury found the City of Union City and Officer Tod Woodward liable for negligence and battery, apportioning the negligence 45 percent to the city, 50 percent to the officer, and 5 percent to Lucilla. In the prior appeal, we upheld the finding of liability against Woodward for unreasonable use of force and against the city under principles of vicarious liability. We reversed the portion of the jury's verdict against the city based on its direct negligence, however, and remanded with directions to the trial court to "enter a new judgment consistent with the jury's verdict against [the officer] and this opinion." The trial court held that the effect of our decision was to decrease by 45 percent the amount of plaintiffs' (Lucilla's family) recovery. Plaintiffs

now contend the trial court erred in reducing the total amount of the judgment rather than apportioning a greater share of the liability to the officer. We agree and reverse the judgment.

## STATEMENT OF THE CASE AND FACTS

In 1998, Lucilla Amaya was shot and killed by a Union City police officer who had been summoned to the house in which Lucilla, under the influence of methamphetamine and armed with two knives, was located with her daughter and father. The factual background is recited in great detail in our prior opinion, *Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, 1083–1093 [16 Cal.Rptr.3d 521] (*Munoz I*), and need not be repeated at length here. In brief, Lucilla's brother called the police reporting that Lucilla was under the influence of something, had been "5150" in the past and was in possession of a knife, and that he was concerned she might harm herself or his father and niece. Tod Woodward, the officer in charge of the police response, tried to talk to and calm Lucilla, who was inside the house at a screen door and very agitated. Evidence of the precise events was disputed on many points, including when the police drew their guns, whether Woodward remained calm or became frustrated, and whether Lucilla made certain threats. Ultimately, when Lucilla made a movement that Woodward testified led him to believe she was going to kill her father and daughter, Woodward shot and killed Lucilla.

Plaintiffs' suit against Woodward and Union City went to the jury on theories of negligent and intentional wrongful death, infliction of emotional distress, negligent employment and failure to supervise and train employees, and respondeat superior. (*Munoz I, supra,* 120 Cal.App.4th at p. 1082.) Plaintiffs claimed Woodward was negligent both because of the manner in which he supervised the police response and, separately, because he personally used deadly force against Lucilla. (*Id.* at p. 1094.) The majority in our prior opinion found the trial court erred in submitting the former theory to the jury as the police could not be held liable for negligence in their response to public safety emergencies. (*Id.* at pp. 1097–1098; cf. *Adams v. City of Fremont* (1998) 68 Cal.App.4th 243 [80 Cal.Rptr.2d 196].) We affirmed the judgment against Woodward, however, because the jury's finding that Lucilla's death was caused by Woodward's battery—his unreasonable use of force—was a sufficient basis of liability. (*Munoz I,* at p. 1101.)

Plaintiffs' case against Union City was based partly on the doctrine of vicarious liability, and, therefore, it was conceded that Union City was liable

for the judgment against Woodward. (*Munoz I, supra,* 120 Cal.App.4th at p. 1110.) Plaintiffs also sought to hold Union City liable for its own direct negligence in the selection, training, retention, supervision and discipline of police officers and in failing to promulgate procedures and policies to guide police response to critical incidents. (*Id.* at p. 1112.) Based on *Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175 [7 Cal.Rptr.3d 552, 80 P.3d 656] (*Eastburn*), we held the judgment against Union City based on its direct negligence could not be sustained because this theory of liability was not grounded upon a violation of a statutory duty by the public entity. (*Munoz I,* at p. 1082.)

On remand to the trial court, plaintiffs argued that *Munoz I* removed Union City from the universe of tortfeasors because of its sovereign immunity, thereby requiring 100 percent of the fault to be allocated between Woodward and Lucilla. Plaintiffs asked the trial court to enter a new judgment based on either of two alternative theories. First, they argued Union City's liability should remain at 95 percent despite elimination of the direct liability theory, on the basis that liability cannot be apportioned between two theories attributable to a single defendant. Alternatively, they maintained Woodward should be held liable for 91 percent of the damages, on the theory that the resulting ratio—91 percent to Woodward and 9 percent to Lucilla—would maintain the jury's assessment of Woodward and Lucilla's relative fault (50 percent to 5 percent).

Union City opposed plaintiffs' motion for a new judgment, arguing that *Munoz I* simply called for entry of a judgment reducing the jury's verdict by the 45 percent liability the jury had assigned to Union City. Union City argued that allocating its 45 percent fault to Woodward would violate the statutory requirement of several rather than joint liability and that reapportionment of the liability would require a new trial.

The trial court issued a tentative ruling on December 10, 2004, finding that because *Munoz I* did not reduce plaintiffs' damages but did eliminate Union City as a tortfeasor, the damages should be apportioned 5 percent to "the plaintiff" and 95 percent to Woodward. Union City contested this ruling and, after oral argument, the trial court entered its order decreasing the amount payable to plaintiffs by 45 percent. The revised judgment against Woodward

for 50 percent of plaintiffs' damages was entered on March 7, 2005, and notice of entry of judgment was filed on March 11, 2005.

Plaintiffs filed a timely notice of appeal on April 27, 2005.

## DISCUSSION

■ Preliminarily, Union City argues that plaintiffs are precluded from challenging the trial court's decision by the doctrine of invited error, in that they "invited" the outcome by pursuing a theory of direct liability against Union City. "The 'doctrine of invited error' is an 'application of the estoppel principle': 'Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal. (9 Witkin, Cal. Procedure [(4th ed. 1997)] Appeal, § 383, p. 434, italics omitted.) We said as much in *Hasson* v. *Ford Motor Co.* (1982) 32 Cal.3d 388, 420–421 [185 Cal.Rptr. 654, 650 P.2d 1171]. At bottom, the doctrine rests on the purpose of the principle, which is to prevent a party from misleading the trial court and then profiting therefrom in the appellate court. (See, e.g., *People* v. *Upshaw* (1974) 13 Cal.3d 29, 34 [117 Cal.Rptr. 668, 528 P.2d 756]; *Jentick* v. *Pacific Gas & Elec. Co.* (1941) 18 Cal.2d 117, 121 [114 P.2d 343]; see also 9 Witkin, Cal. Procedure (4th ed., [2006] supp.) Appeal, § 383, [pp. 112–113]; cf. *Myers Building Industries, Ltd.* v. *Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 960, fn. 8 [17 Cal.Rptr.2d 242] [speaking of a party misleading the jury].) In light of this principle, as we explained in *Mary M.* v. *City of Los Angeles* (1991) 54 Cal.3d 202 [285 Cal.Rptr. 99, 814 P.2d 1341] . . . , the doctrine has not been extended to situations wherein a party may be deemed to have induced the commission of error, but did not in fact mislead the trial court in any way—as where a party ' " 'endeavor[s] to make the best of a bad situation for which [it] was not responsible.' " ' (*Id.* at p. 213.)" (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [87 Cal.Rptr.2d 453, 981 P.2d 79].)

We do not find the invited error doctrine applicable here. At the jury trial, plaintiffs pursued theories of liability against Union City, which they continued to press on Union City's appeal of the judgment. After our decision in *Munoz I* reversed the judgment against Union City, plaintiffs addressed the effect of that decision by arguing for reallocation of the damages assessed by the jury. On the present appeal from the trial court's rejection of their theory of allocation, they again urge the same theory as they did in the trial court. The trial court's error in rejecting plaintiffs' requested reallocation was the result of its misapplication of *Munoz I*, not of any misleading conduct by plaintiffs.

Nor are we persuaded by Union City's argument that plaintiffs waived their reallocation argument by not presenting it on the first appeal, after this court

raised the *Eastburn* issue. Plaintiffs argued against the result we reached in *Munoz I* as to Union City's liability for direct negligence; their position was that the judgment should be affirmed in its entirety. We are aware of no authority requiring the respondent on appeal to anticipate a ruling against it and raise arguments concerning the implementation of such a ruling.[1]

Turning to the merits, plaintiffs argue, as they did in the trial court, that the effect of *Munoz I* should have been to assess against Woodward all the liability not due to Lucilla's contributory negligence, without reducing the overall damages award. They rely upon *Richards v. Owens-Illinois, Inc.* (1997) 14 Cal.4th 985 [60 Cal.Rptr.2d 103, 928 P.2d 1181] *(Richards)*.

*Richards* was an asbestos suit in which all the defendant asbestos manufacturers except Owens-Illinois settled after the damages stage of trial, leaving Owens-Illinois the sole defendant at the liability stage. Owens-Illinois sought to show that tobacco companies (in addition to the other asbestos companies, the plaintiff's employers and the plaintiff) contributed to the plaintiff's injuries. Under Civil Code section 1431.2, subdivision (a), in a tort action based upon principals of comparative fault, each defendant's liability for noneconomic damages is limited to that defendant's percentage of fault.[2] Accordingly, Owens-Illinois sought to reduce its own liability by demonstrating that the tobacco companies bore a proportionate share of the fault for the plaintiff's injuries.

At the time *Richards* was decided, Civil Code former section 1714.45 provided that, "with specified exceptions, a manufacturer or seller 'shall not be liable' in a 'product liability action' for harm caused by the ingestion of a

[1] In a petition for rehearing, Union City complains that our opinion failed to address its contention, raised in a footnote of its brief on the appeal, that the law of the case doctrine precludes us from modifying the amount of vicarious liability assessed against it. " ' "The rule of 'law of the case' generally precludes multiple appellate review of the same issue in a single case. . . ." ' [Citation.] [¶] . . . [¶] We will apply the law of the case doctrine where the point of law involved was necessary to the prior decision and was ' "actually presented and determined by the court." ' (*People v. Shuey* [(1975)] 13 Cal.3d [835,] 842 [120 Cal.Rptr. 83, 533 P.2d 211]).)" (*People v. Gray* (2005) 37 Cal.4th 168, 196–197 [33 Cal.Rptr.3d 451, 118 P.3d 496].)

Union City's argument is based on our statement, in *Munoz I*, that "this opinion affirms respondents' judgment as to their vicarious liability claim." (*Munoz I, supra*, 120 Cal.App.4th at p. 1115, fn. 14.) This statement was made in the context of rejecting the plaintiffs' request that they be allowed to amend their complaint to allege their direct negligence claim as one for vicarious liability based on the negligence of identified employees other than Woodward. *Munoz I* did not address the reallocation issue presented by the current appeal; it affirmed the City's vicarious liability for Woodward's negligence but did not necessarily freeze the measure of that liability at 50 percent.

[2] Civil Code section 1431.2, subdivision (a), provides: "In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."

'common consumer product intended for personal consumption, such as . . . tobacco' which is 'inherently unsafe' and consumed with 'ordinary [community] knowledge' of its danger." (*Richards, supra*, 14 Cal.4th at p. 988.)[3] *Richards* held that no fault could be assigned to the tobacco companies because "under the conditions described by section 1714.45, a tobacco supplier simply commits no tort against knowing and voluntary smokers by making cigarettes available for their use." (*Richards, supra*, 14 Cal.4th at p. 1000.)

In *Munoz I*, in keeping with *Eastburn*, we determined that Union City could not be held liable for direct negligence under the doctrine of sovereign immunity. (*Munoz I, supra*, 120 Cal.App.4th at pp. 1082, 1110–1115.) Plaintiffs urge that the situation is the same as in *Richards*, reasoning that Union City could have no fault with respect to Lucilla's death because the doctrine of sovereign immunity is based on the "historic premise that 'the King can do no wrong.' Prosser & Keeton on The Law of Torts (5th ed. 1984) pp. 1033, 1043.)"

The trial court disagreed, finding the present case more analogous to *DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593 [7 Cal.Rptr.2d 238, 828 P.2d 140] (*DaFonte*). In *DaFonte*, which *Richards* distinguished, an employee who was injured at work received workers' compensation benefits and sued the manufacturer of the equipment on which he was injured. The jury apportioned liability between the employee (15 percent), the manufacturer of the product on which he was injured (40 percent), and the employer, who was not a defendant (45 percent). *DaFonte* upheld the trial court's reduction of the judgment against the manufacturer by 45 percent of the noneconomic damages, reflecting the employer's portion of the fault, as well as by the 15 percent attributed to the employee, holding that under Civil Code section 1431.2, "a 'defendant['s]' liability for noneconomic damages cannot exceed his or her proportionate share of fault *as compared with all fault responsible for the plaintiff's injuries*, not merely that of 'defendant[s]' present in the lawsuit." (*DaFonte*, at p. 603.)

*Richards* explained that *DaFonte* "made clear" that "the employer's immunity from tort damages for job-related injuries, an immunity narrowly founded on an alternative compensation scheme, does not imply any absence of legal 'fault' or tortious responsibility in an employer whose act or omission contributed to the harm. (*DaFonte, supra*, 2 Cal.4th at pp. 598–599, 604,

---

[3] This statute was amended in 1997 to delete the reference to tobacco and remove the statutory bar to tobacco-related claims against tobacco manufacturers. (Stats. 1997, ch. 570.)

fn. 6.)" (*Richards, supra*, 14 Cal.4th at p. 998.) For this reason, it was appropriate to reduce the verdict in *DaFonte* in proportion to the employer's fault but was not appropriate to reduce the verdict in *Richards*, where the tobacco companies had no legal fault.

As explained in *Taylor v. John Crane, Inc.* (2003) 113 Cal.App.4th 1063 [6 Cal.Rptr.3d 695], "*Richards* and *DaFonte* establish that under [section 1431.2], fault will be allocated to an entity that is immune from *paying for* its tortious acts, but will not be allocated to an entity that is not a tortfeasor, that is, one whose actions have been declared not to be tortious." (*Id.* at p. 1071.) The plaintiff in *Taylor* had been exposed to asbestos products while in the Navy. In his suit against John Crane, Inc., the jury allocated fault between the defendant, the Navy (which was not a defendant) and other entities that were not parties to the case. The plaintiff challenged allocation of fault to the Navy based upon *Richards*, arguing that the Navy was immune from suit under the Federal Tort Claims Act provisions for discretionary decisions and for injuries suffered during military service. (113 Cal.App.4th at pp. 1068–1071.) *Taylor* found the allocation of fault to the Navy proper even if the Navy was immune under either of these provisions, explaining, "[w]e are aware of no declaration stating the government breaches no duty to military personnel when it exercises its discretion or when a serviceman is injured in the course of military service. Indeed, the cases make clear the government is immune from claims based on such conduct *even if it has been negligent.*" (*Id.* at p. 1071.)

In *Ford v. Polaris Industries, Inc.* (2006) 139 Cal.App.4th 755 [43 Cal.Rptr.3d 215], the plaintiff was injured when she fell off a jet ski being operated by her sister-in-law. The plaintiff sued the manufacturer of the jet ski for products liability and her sister-in-law for negligence. The trial court found the sister-in-law owed no duty under the doctrine of primary assumption of the risk. *Ford* upheld the trial court's refusal to permit the jury to allocate a portion of the fault to the sister-in-law, finding that she "was not a tortfeasor and hence no fault could be allocated to her." (*Id.* at p. 777.) "The judgment in her favor was a judgment that as a matter of law, [the sister-in-law], as operator/coparticipant, owed no duty of care to [the plaintiff]. Because [the sister-in-law] breached no duty and committed no tort, there is no legal fault to apportion to her." (*Id.* at p. 778.)

Reading *Richards* and *Eastburn* together, it is clear Union City was not within the universe of tortfeasors who could be held liable for Lucilla's death. In reaching a contrary conclusion, the trial court reasoned: "While immunity

under [the statute at issue in *Richards*] concerns the underlying merits of the tort, sovereign immunity concerns the public policy implications of limiting governmental liability. Like the employer in *DaFonte*, there is no question that the City's actions played a role in what happened at the Amaya house. But, as in *DaFonte*, Plaintiffs' inability to collect damages from the City does not change the calculus of liability vis à vis the other defendants."

As explicated in *Eastburn, supra*, 31 Cal.4th 1175, however, sovereign immunity does not mean simply that plaintiffs cannot collect damages from the public entity. *Eastburn* held that "direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care." (*Id.* at p. 1183.) *Eastburn* specifically criticized this court's decision in *Ma v. City and County of San Francisco* (2002) 95 Cal.App.4th 488 [115 Cal.Rptr.2d 544] for " 'employing a traditional common law duty analysis' " with respect to the public entity's liability "[w]ithout acknowledging the provisions of Government Code section 815,[4] requiring a statutory basis for direct public entity liability." (*Eastburn*, at p. 1182.) In the absence of duty, there can be no tort liability, and no fault can be allocated to a party that is not a tortfeasor. (*Richards, supra*, 14 Cal.4th at p. 1000; *Ford v. Polaris Industries, Inc., supra*, 139 Cal.App.4th at pp. 777–778.) It necessarily follows that no portion of the fault could be allocated to Union City in the present case. The trial court thus erred in reducing plaintiffs' recovery by 45 percent: Since Union City was not a tortfeasor, there was no basis for allocating a portion of the damages under principles applicable when two or more defendants are legally at fault.

Plaintiffs ask us to modify the judgment by reallocating the fault 9 percent to Lucilla and 91 percent to Woodward, allowing plaintiffs the full recovery to which the jury found them entitled and maintaining the jury's assessment of the relative responsibility of the only two parties legally at fault.[5] Union City argues that if the trial court's judgment is not correct, the matter must be remanded for retrial on the issue of allocation of damages because this court

---

[4] Government Code section 815 provides, in relevant part: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."

[5] As will be explained, this allocation maintains the jury's determination that Woodward was 10 times more responsible than Lucilla for the latter's death.

Long after briefing on this appeal had been complete, plaintiffs requested permission to "submit" the decision in *Thomas v. Duggins Construction Co., Inc.* (2006) 139 Cal.App.4th 1105 [44 Cal.Rptr.3d 66], which held that an intentional tortfeasor's liability is not subject to apportionment under Civil Code section 1431.2, subdivision (a). *Thomas* held that the statute did not change the previously existing rule that an intentional tortfeasor was not entitled to contribution from other tortfeasors. The jury in *Thomas* apportioned fault for the plaintiffs' injuries 40 percent to the plaintiffs' employer, 40 percent to Duggins, the company that sold the equipment to the employer, and 10 percent each to two of Duggins's employees. The jury found that one of the employees made intentional misrepresentations in connection with the

may not speculate as to how the jury would have allocated fault if Woodward was the only defendant liable for damages.[6]

■ "Whenever an appellate court may make a final determination of the rights of the parties from the record on appeal, it may, in order to avoid subjecting the parties to any further delay or expense, modify the judgment and affirm it, rather than remand for a new determination. (*Fox* v. *Hale & Norcross S. M. Co.* (1898) 122 Cal. 219, 221–222 [54 P. 731]; *Sorensen* v. *Allred* [(1980)] 112 Cal.App.3d [717,] 726 [169 Cal.Rptr. 441].) The record is sufficiently definite in this case to do so because the comparative fault of all the parties was determined by the jury. 'Certainly when explicit findings as to the comparative fault of multiple defendants have already been made in the trial court, as in the case at bar, it presents no undue burden to permit such findings to be utilized as a basis for the allocation of liability among the defendants.' (*Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322, 334, fn. 6 [146 Cal.Rptr. 550, 579 P.2d 441].)" (*Sagadin v. Ripper* (1985) 175 Cal.App.3d 1141, 1170 [221 Cal.Rptr. 675].)

The Restatement Third of Torts suggests that when an appellate court determines the fact finder erred in assigning a percentage of fault to a party or other entity, "[o]ne remedy is for the court to reallocate the nonliable person's share of comparative responsibility proportionately to the remaining persons." (Rest.3d Torts, Apportionment of Liability, § 7 com. h , pp. 67–68.) In one of the illustrations provided, in a suit by A against B and C, the fact finder assigns 30 percent responsibility to A, 60 percent responsibility to B, and 10 percent responsibility to C. When the appellate court holds that the jury should not have been asked to assign a percentage of responsibility to C,

sale. (139 Cal.App.4th at p. 1108.) Accordingly, *Thomas* held Duggins (responsible under principles of respondeat superior) was not entitled to apportionment to reflect the employer's negligence. (*Id.* at p. 1113.)

Although *Thomas* was decided well after the jury trial in this case, the decision did not change existing law, but rather clarified that Civil Code section 1431.2 did *not* change existing law. As *Thomas* stated, "At the time Proposition 51 was adopted, the law was well established that a tortfeasor who intentionally injured another was not entitled to contribution from any other tortfeasors. (Code Civ. Proc., § 875, subd. (d).)" (*Thomas v. Duggins Construction Co., Inc., supra*, 139 Cal.App.4th at p. 1111.) This rule applies to the negligence of the plaintiff or of third parties. (*Allen v. Sundean* (1982) 137 Cal.App.3d 216, 226–227 [186 Cal.Rptr. 863]; *Godfrey v. Steinpress* (1982) 128 Cal.App.3d 154, 176 [180 Cal.Rptr. 95].) Plaintiffs here never suggested at trial, on the first appeal, or on remand, that there was any significance to the fact Woodward was found to have committed an intentional tort. Nothing precluded them from making such an argument. It is too late in the day to raise the new argument that Woodward was fully liable for plaintiffs' damages on this basis.

[6] There is no suggestion in this case that retrial of the *amount* of damages would be appropriate. The special verdict called upon the jury to determine first the amount of damages and only then the allocation of these damages between the defendants. Since the damage award was based on the injuries suffered by plaintiffs, it could not rationally be affected by the presence or absence of Union City as a defendant.

"[t]he court may avoid a new trial by assigning 33-1/3 percent (30/90) responsibility to A and 66-2/3 percent (60/90) of the responsibility to B." (Rest.3d Torts, Apportionment of Liability, § 7, com. h, illus. 5, p. 68.)[7]

Here, the jury found Lucilla 5 percent at fault, Woodward 50 percent and Union City 45 percent. Union City has suggested no reason the jury would have assessed Lucilla's responsibility differently if Woodward had been the only defendant than it did with Woodward and Union City as codefendants. The negligence the jury found on the part of Union City was completely distinct from Woodward's, and we can conceive of no rational basis upon which the jury could have viewed Union City's presence or absence as a party to the case as altering Lucilla's and Woodward's relative responsibility for the events. The jury's assessment of fault as 5 percent to Lucilla and 50 percent to Woodward reflects a determination that Woodward was 10 times more responsible than Lucilla. Applied to 100 percent of the fault, following the illustration in the Restatement Third of Torts, this ratio is maintained by allocating 9 percent of the fault to Lucilla (5/55) and 91 percent of the fault to Woodward (50/55).

The out-of-state cases upon which Union City relies to argue for a retrial on allocation of damages are unavailing. In *Kibbons v. Union Elec. Co.* (Mo. 1992) 823 S.W.2d 485, the jury apportioned fault 40 percent to the decedent and 30 percent to each of two defendants. (*Id.* at pp. 487–488.) The appellate court determined that one of the two defendants was not legally responsible for the injury. It reversed and ordered a retrial on allocation of damages because it found the jury's verdict "ambiguous": the jury might have viewed the decedent's negligence as "somewhat less than half of the total negligence," leading to the assessment of 40 percent to the decedent and 60 percent to the defendants collectively, or it might have viewed the decedent as slightly *more* negligent than either of the defendants considered separately, leading to an assignment of 40 percent to the decedent and 30 percent to each of the defendants. (*Id.* at p. 491.) With one defendant removed from the action, the different views of the parties' relative negligence would yield very different allocations of fault as between the decedent and the remaining defendant. (*Id.* at pp. 491–492.)

No similar ambiguity appears in the present case. There was no question of Lucilla's fault exceeding that of either defendant, nor, as stated above, any

---

[7] Union City suggests that the Restatement of Torts does not recommend reallocation (as opposed to retrial) where a portion of the responsibility has been assigned to the plaintiff. In fact, while recognizing reallocation would not be appropriate where the jury's verdict is ambiguous, the reporter's note to comment h makes clear that "[u]nless there is some clear indication that the factfinder did not make a comparative assignment, a court should reallocate even when the plaintiff has been assigned a percentage of responsibility." (Rest.3d Torts, Apportionment of Liability, § 7, p. 78 (reporter's note to com. h).)

reason to suspect her degree of fault would be viewed differently depending on whether the case was against Woodward alone or together with Union City.

In *Price v. Kitsap Transit* (1994) 125 Wn.2d 456 [886 P.2d 556], an accident occurred when a small child pulled the emergency stop switch on a bus. Fault was assessed by the jury 80 percent to the child, 10 percent to the father and 10 percent to the bus company. (886 P.2d at p. 558.) On appeal, it was determined that the child could not be held liable and the matter was remanded for apportionment of liability between the father and the bus company. (*Id.* at pp. 559–560.)

The result in *Price* was necessary because of the huge proportion of responsibility attributed to the child: There was no way to determine how the trier of fact would have allocated that 80 percent of the fault between the two parties it had viewed as bearing a comparatively tiny portion of responsibility for the accident. Here, while the jury assigned a significant percentage of fault to Union City, it was not the vast majority of overall fault. Moreover, again, there is no cognizable manner in which the fact that Union City could not be held responsible for negligence in preparing officers to handle situations such as presented in this case could alter Lucilla's and Woodward's relative responsibility.

*Nichols v. Westfield Industries, Ltd.* (Iowa 1985) 380 N.W.2d 392, is not of apparent relevance to the present case. In that case, a jury apportioned fault 60 percent to the injured plaintiff, 15 percent to the manufacturer of the equipment upon which he was injured, 15 percent to the manufacturer's dealer, and 10 percent to the original purchaser, who resold the equipment to the plaintiff's employer. (*Id.* at p. 396.) On appeal, it was determined that the original purchaser could not be held liable at all and one of the theories of negligence could not be maintained against the dealer. (*Id.* at pp. 396–398, 401.) The judgment was affirmed as to the manufacturer and remanded for retrial as to the dealer, solely on the question of negligence; the court held the percentage of the plaintiff's negligence and the amount of damages had been established. If after retrial the dealer was held liable, an action for contribution might be pursued between the manufacturer and the dealer. (*Id.* at p. 402.) Thus, *Nichols* did not order reallocation of fault or damages as between the parties remaining in the case; at the time of the court's order, it had not been determined that there would be a need for reallocation.

## DISPOSITION

The judgment is reversed and the matter remanded to the trial court, with directions to enter a new judgment apportioning liability 9 percent to Lucilla and 91 percent to Woodward.

Haerle, J., and Richman, J., concurred.

A petition for a rehearing was denied April 2, 2007, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied June 13, 2007, S151702.