Filed 2/22/22  Baccari City of Long Beach CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| FELIPA BACCARI, | B308604 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCP01622) |
| v. | |
| CITY OF LONG BEACH et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel, Judge.  Affirmed.

Ahrony Appeals Law Group and Orly Ahrony for Plaintiff and Appellant.

Charles Parkin, City Attorney, and Gary J. Anderson, Principal Deputy City Attorney, for Defendants and Respondents.

———————————————

Appellant Felipa Baccari, a City of Long Beach police officer for more than 19 years, was terminated following her involvement in an off-duty incident of "road rage." She challenged her termination by way of administrative review (*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194), then filed a petition for administrative mandate. (Code Civ. Proc., § 1094.5.) Her challenges were both denied, albeit one of the administrative law judges thought the penalty was too severe. Baccari appeals, claiming the punishment doesn't fit the crime. We disagree and affirm the judgment.

## STATEMENT OF FACTS

**The major incident.** Baccari worked for the Long Beach Police Department for more than 19 years. Her termination was based on two incidents, only one of which is relevant to these proceedings.[1] The relevant incident occurred on October 5, 2016, at a time when Baccari was not on duty (and not in uniform). She drove her car out of a parking lot, attempting to make a left turn onto Crenshaw Boulevard (a two-way street). She made it as far as the center turning lane but then (when the closest traffic signal changed from red to green) got stuck by oncoming traffic, blocking northbound traffic in the number one lane.

Jason Sorge, a motorist blocked by Baccari's maneuver, honked his horn, rolled down his window, and screamed crude

---

[1] Because the other incident was not "serious," it was admitted. Baccari left evidence unattended at the police station, an offense that at most would have resulted in a one-day suspension.

2

invectives at Baccari. In response, Baccari rolled down her window, turned to face Sorge, and made hand gestures signifying that she could not move due to oncoming traffic. In response, Sorge reached for something in his car (it turned out to be a bottle of water, but Baccari did not know that until later). Baccari — out of uniform and off duty — then reached for her pistol and raised it in Sorge's direction, although apparently out of his line of sight.

As Baccari was grabbing her pistol, Sorge angrily hurled the water from the bottle at her — a direct hit since her window was open. Baccari was "stunned." By the time she determined the liquid was in fact just water, Sorge had merged into the right lane, followed by Baccari, until both stopped at a red light.

Convinced that she had been assaulted, Baccari turned her car around, then parked it, all the time holding her gun at her side. Only after Sorge said that his daughter was in the car did Baccari identify herself as a police officer. Baccari then retrieved her badge from her car, at which point Sorge became apologetic. Baccari accepted his apology. When two officers from the Torrance Police Department arrived, Baccari told them it was just water that Sorge had thrown at her.

**The *Skelly* hearing**. Ultimately, Baccari was charged with three violations — the Crenshaw Boulevard incident vis-à-vis her driving, the Crenshaw Boulevard incident vis-à-vis her brandishing of her pistol without showing identification, and the matter of the unattended evidence. The chief of police made the decision to terminate Baccari, describing her conduct as "extremely dangerous," "reckless," and "irresponsible." A witness

(Manuel Acosta) was so concerned about Baccari's behavior that he took pictures with his cell phone (and he was the one who called the Torrance police when he saw Baccari brandish her gun). In Acosta's words, Baccari was most concentrated on "building up a confrontation," without regard to others on the road.

At the conclusion of the hearing, the Long Beach Civil Service Commission concurred with the city manager's decision to dismiss Baccari, and Baccari's mandate petition against the City of Long Beach, the Long Beach Civil Service Commission, and the Chief of Police (collectively, the City of Long Beach) was thereafter denied. This appeal followed.

## LEGAL DISCUSSION

**Standard of review.** The parties agree that, as to our review of the order granting summary judgment, our job is to review the record for substantial evidence to support the trial court's factual findings. (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 45.) As to the decision to terminate Baccari's employment, we will reverse only if we find the trial court abused its discretion. (*Talmo v. Civil Service Com.* (1991) 231 Cal.App.3d 210, 226-228.) As Baccari concedes in her opening brief, if "reasonable minds could differ about the propriety of the discipline imposed by the commission, an abuse of discretion is not shown."

We agree with the City of Long Beach that overwhelming evidence supports the decision to terminate Baccari, and that the trial court did not abuse its discretion in confirming the decision to terminate Baccari's employment. Aside from the fact that she drove recklessly, she brandished her gun on a crowded street. She

4

was in plain clothes and did not have her badge on her person (it was in her car). Recent history tells us how fast these incidents can escalate and how easy it would have been for someone (the participants or a bystander) to be shot. Baccari's effort to cast Sorge as a "criminal suspect" and herself as a "responsible officer" is simply not supported by the evidence. She started the confrontation by making an illegal left-hand turn into oncoming traffic. Although Sorge should not have thrown water at Baccari, her reaction was entirely out of proportion. As Acosta testified, it was Baccari who was confrontational, not Sorge.

**The penalty of termination was not excessive.** Substantial evidence supports the decision to terminate Baccari's employment, and the trial court did not abuse its discretion in confirming that decision. (*Paulino v. Civil Service Com.* (1985) 175 Cal.App.3d 962, 970.) The Long Beach police department and those who administer it did not abuse their discretion. (*Lake v. Civil Service Commission* (1975) 47 Cal.App.3d 224, 228.) As noted above, the Crenshaw Boulevard incident could have escalated into a shooting and it is clear that Baccari's conduct, if repeated, would likely result in harm. (*Munoz v. City of Union City* (2007) 148 Cal.App.4th 173; *Warren v. State Personnel Bd.* (1979) 94 Cal.App.3d 95, 107-108 [some occupations, such as law enforcement, carry responsibilities and limitations on personal freedom].)

As Division Two of our court explained in *Hankla v. Long Beach Civil Service Com.* (1995) 34 Cal.App.4th 1216, 1223, there "is ample precedent for terminating the employment of law enforcement personnel who use their weaponry under dubious

circumstances." The fact that Baccari did not point her gun at anyone is immaterial. The point is that, in her "confrontational" state of mind, someone could have been shot.

Baccari contends a lesser punishment would have sufficed, but she points to no evidence in the record suggesting there was another position she could have filled where she would not be required to carry a weapon (and a suspension would have resulted in her return to the streets). If anything, her length of service should have taught her to control her behavior. Instead, she wants credit for the fact that she "did not initiate the incident with Sorge." The evidence shows otherwise — she is the one who drove into oncoming traffic and blocked Sorge's car. Similarly, she claims she was the "victim" of an assault by Sorge. True, he threw water at her — but she grabbed her gun, an extreme and unjustified reaction. She also says she "never intended to shoot" Sorge. Gun in hand, she could still have shot him or Acosta or some other unfortunate passerby — even without the specific intent to do so.

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED

VOGEL, J.*

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

---

\* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.